# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUSAN M. PIZANO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 13 C 4809 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on the parties' cross motions for summary judgment. For the reasons stated below, Plaintiff Susan M. Pizano's (Pizano) motion for summary judgment is granted in part, and Defendant Social Security Administration's (SSA) motion is denied. This matter is remanded to the SSA for further proceedings consistent with this opinion.

## BACKGROUND

In July 2010, Pizano applied for Supplemental Security Income (SSI), contending that she suffered from certain physical and mental impairments. Pizano's application was denied, and then denied again on reconsideration. Pizano then requested an evidentiary hearing before an Administrative Law Judge (ALJ). After a

1

hearing, the ALJ denied the claim for SSI, and Appeals Council subsequently denied Pizano's request for review. Pizano has filed a motion for summary judgment, seeking to have the ALJ's decision reversed and remanded for an award of benefits, and seeking in the alternative to have this case remanded to the ALJ for further proceedings to correct errors made by the ALJ. Defendant has filed a motion for summary judgment seeking an affirmance of the ALJ's decision.

## LEGAL STANDARD

Pursuant to 42 U.S.C. §405(g), a party can seek judicial review of administrative decisions made under the Social Security Act. When an ALJ's decision is deemed to be "the final action of the Social Security Administration, the reviewing district court examines the ALJ's decision to determine whether substantial evidence supports it and whether the ALJ applied the proper legal criteria." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).

## DISCUSSION

An ALJ examines a claim of disability under a five-step process. *Craft v. Astrue*, 539 F.3d 668, 673-74 (7th Cir. 2008). In step one, the ALJ "considers whether the applicant is engaging in substantial gainful activity." *Id.* In step two, the ALJ "evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement." *Id.* In step three, the ALJ "compares the impairment to a list of impairments that are considered

2

conclusively disabling." *Id.* If the applicant's impairment satisfies "or equals one of the listed impairments, then the applicant is considered disabled" and the inquiry ends. *Id.* If the inquiry continues, in step four, the ALJ "assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work." *Id.* In step five, the ALJ "assesses the applicant's RFC, as well as her age, education, and work experience to determine whether the applicant can engage in other work" and "[i]f the applicant can engage in other work, [s]he is not disabled." *Id.*

In the instant appeal, Pizano argues: (1) that the ALJ erred by failing to accord proper weight to the opinion of Pizano's treating psychiatrist, (2) that the ALJ erred by failing to properly determine Pizano's RFC, and (3) that the ALJ erred in analyzing Pizano's credibility.

I. Opinion of Treating Psychiatrist

Pizano argues that the ALJ failed to accord sufficient weight to the opinion of Dr. Sharon Lieteau (Lieteau) who was Pizano's treating psychiatrist. The opinion of a treating psychiatrist "is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010)(addressing the consideration of the treating psychiatrist in that case)(internal quotations omitted)(quoting *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010)). An ALJ that declines to give controlling weight to a treating psychiatrist's opinion "must offer good reasons for discounting" the opinion. *Id.*; *see*

3

*also Schmidt v. Astrue*, 496 F.3d 833, 842-43 (7th Cir. 2007)(stating that an ALJ is permitted to give less weight to a treating physician's medical opinion if it "is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as [the ALJ] minimally articulates [her] reasons for crediting or rejecting evidence of disability").

In the instant action, the ALJ noted that Lieteau had indicated that Pizano had "extreme functional limitations in February 2009." (AR 32). The ALJ also noted that in 2009 Pizano had "just started treatment," and that the facts indicated that the limitations opined by Lieteau were "based largely on subjective complaints." (AR 32). The ALJ concluded that Lieteau's opinion as to the "degree of limitation" was not "supported by the counseling notes." (AR 32). The ALJ indicated that she gave Lieteau's opinion "some" weight, "but not controlling weight." (AR 32).

SSA contends that the ALJ properly referenced the length of Pizano's treatment because it is appropriate for an ALJ to consider the length of a treatment relationship between a treating psychiatrist and an applicant in giving weight to the psychiatrist's opinion. An ALJ is instructed pursuant to 20 C.F.R. § 416.927(c), that "the longer a treating source has treated [the applicant] and the more times [the applicant has] been seen by a treating source, the more weight [the ALJ should] give to the source's medical opinion" and that "[w]hen the treating source has seen [the applicant] a number of times and long enough to have obtained a longitudinal picture of [the applicant's] impairment, [the ALJ should] give the source's opinion more

4

weight than [the ALJ] would give it if it were from a nontreating source." 20 C.F.R. § 416.927(c)(2)(I).

While the ALJ in the instant action properly considered the length of the treatment relationship between Pizano and Lieteau, the record does not reflect that the ALJ properly assessed the extent of that relationship or properly assessed the record detailing Lieteau's findings during that relationship. The ALJ discounted the value of Lieteau's opinions because Pizano had "just started treatment" with Lieteau when Lieteau gave her opinion in 2009. However, the record reflects that Lieteau had an extensive and ongoing treatment relationship with Pizano prior to the hearing before the ALJ. The record reflects that Lieteau had weekly meetings with Pizano starting in early 2009 and that Lieteau was Pizano's treating psychiatrist for approximately one year while Pizano was in a residential treatment program. (AR 44, 512). The record also reflects that in February 2010, Lieteau wrote an update of her evaluation for Pizano and that in March 2010 Lieteau prepared a medical evaluation detailing the extensive treatment relationship between Lieteau and Pizano. (AR 512-27).

SSA contends that the ALJ cited the 2010 opinions provided by Lieteau and thus considered such evidence. Although, as the SSA points out, the ALJ included in her decision a citation to the record that included the 2010 opinions of Lieteau, the decision of the ALJ is ambiguous as to whether the ALJ actually considered such evidence. The ALJ stated that Lieteau's opinion in her "medical source statement is not otherwise supported by the counseling notes." (AR 32). The ALJ failed to

5

specify what medical source statement she was referring or explain what she was referring to when she referenced "counseling notes." (AR 32). The fact that the ALJ in her decision subsequently proceeded to discuss Lieteau's opinion in 2009, is an indication that the ALJ was merely addressing the medical opinion provided in 2009.

The ALJ stated that in 2009 Lieteau found that Pizano had "extreme functional limitations," and the ALJ discounted such an opinion because Pizano had "just started treatment." (AR 32). However, the record also reflects that in 2010, Lieteau indicated that Pizano had "made very little progress" since 2009, after over a year of treatment.

The ALJ also concluded that Lieteau's findings were merely based on Pizano's subjective complaints. However, the ALJ failed to adequately explain the basis for her conclusion. The ALJ failed to explain why Lieteau's opinions, including her 2010 opinions, were not based on accepted methods of mental health diagnosis. To the extent that the ALJ believed that Lieteau should have done more to objectively verify Pizano's complaints, the ALJ failed to point to any diagnostic tools that Lieteau should have used or otherwise explain how Lieteau should have conducted her evaluation. Nor did the ALJ adequately address in her decision all the factors referenced in 20 CFR § 416.927(c) relating to the treatment of Pizano by Lieteau for over a year. The ALJ also failed to specifically explain how Lieteau's opinions were contradicted by other evidence in the record. Therefore, the ALJ erred in assessing the weight to be given to Lieteau's opinion. On the other hand, Pizano has not pointed to sufficient evidence that shows that Lieteau's opinion must be

6

accepted as controlling at this juncture. On remand the ALJ must offer sufficient explanation if the opinion of Lieteau is discounted, and before doing so, the ALJ must also offer Pizano an opportunity to provide a further opinion evidence from Lieteau to clarify any ambiguities in the record.

II. Residual Functional Capacity Determination

Pizano also argues that the ALJ erred in her RFC determination. The RFC determination "is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). The ALJ must base the RFC determination "on all the relevant evidence in the record." *Id.*; *see also Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012)(stating that an ALJ is not required to "mention every snippet of evidence in the record," but an ALJ "must analyze a claimant's impairments in combination" and "may not ignore entire lines of contrary evidence").

In the instant action, the ALJ found that Pizano has the residual functional capacity to perform light work, except for no more than occasional climbing, stooping, and crouching. (AR 23). The ALJ also found that Pizano should avoid concentrated exposure to pulmonary irritants and hazards such as unprotected heights and dangerous moving machinery. (AR 23). The ALJ further found that Pizano is able to understand, remember, and carry out simple, "1-4" step tasks only with superficial contact with the general public and occasional interaction with coworkers and supervisors. (AR 23). The ALJ stated that she made the RFC determination

"[a]fter careful consideration of the entire record," and reiterated certain parts of the record. (AR 23). An ALJ must do more than provide conclusory statements and must build a logical bridge from the record to her conclusions. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013)(stating that "[i]n rendering a decision, an ALJ must build a logical bridge from the evidence to h[er] conclusion")(internal quotations omitted)(quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)). It is true that the ALJ need not point to every portion of the record. *See id.* (stating that the ALJ "need not provide a complete written evaluation of every piece of testimony and evidence"). However, in this case, the ALJ failed to adequately explain how the record supported her RFC finding. In addition, although the ALJ assessed Pizano's physical limitations along with certain references to the record, the ALJ failed to address certain portions of the record such as the X-ray report indicating that Pizano had "Osteopenia with multiple compression deformities of both thoracic and lumbar vertebral bodies." (AR 532). The record reflects that physicians concluded that Pizano had "[s]evere low back pain with marked limitation of range of motion." (AR 583). The ALJ failed to explain how Pizano with such limitations would be able to perform light work with such limitations. The ALJ also failed to adequately explain why Pizano is able to continue to perform unskilled work with limited contact with others when considering the evidence in the record illustrating Pizano's mental limitations. (AR 512, 435-36, 645). Further, the ALJ failed to properly account for all of Pizano's limitations, such as deficiencies in concentration, persistence, or pace and her inability to maintain regular attendance

8

and be punctual, when questioning the vocational expert in this case. (AR 22, 33, 68-70). Nor has SSA shown that the ALJ's hypothetical questioning sufficiently followed the ALJ's RFC findings. Such limitations would have been relevant particularly since the vocational expert testified that for the positions available, the individual could not be absent for more than four work days in a year. (AR 70). Although the ALJ did not adequately address the RFC determination, Pizano has not pointed to sufficient evidence in the record to support any particular finding in her favor as to her RFC at this juncture. Pizano has shown that a remand is warranted to provide an opportunity to the ALJ to conduct an additional investigation as to the RFC and to make a new RFC determination.

III.  Assessment of Pizano's Credibility

Pizano argues that the ALJ improperly evaluated the credibility of Pizano's testimony. Credibility assessments made by an ALJ are given "special, but not unlimited, deference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012)(stating that "[t]he ALJ must consider a number of factors imposed by regulation, . . . and must support credibility findings with evidence in the record").

In the instant action, the ALJ indicated that the degree of limitations claimed by Pizano were not credible based on her poor compliance in showing up for medical appointments, her withholding of medical information from medical providers, and her desire for sedating medication instead of medication to treat her alleged limitations. (AR 32). However, the ALJ fails to adequately explain the nexus

9

between the failure to show up for medical appointments and Pizano's credibility in this case. As Pizano points out, such conduct merely corroborates her claims that she suffers from serious depression and mental limitations. This is in fact supported in the 2010 opinion provided by Lieteau's 2010 letter. Lieteau specifically concluded that Pizano has a "pattern of poor judgement and inability to do anything for herself," and that "[s]he is totally dependent on others to make sure she keeps her physician's appointments. . . ." (AR 512). The ALJ thus failed to support her theory that the missed appointments and providing insufficient information to medical providers somehow evinced an indifference to Pizano as to available treatment or showed that Pizano was lying about her claimed symptoms.

The ALJ also questioned Pizano's credibility as to her claimed limitations based on her apparent preference for sedating drugs. The ALJ stated that "Records at Exhibit 4F describe the claimant as ambivalent as to receiving real treatment and instead wanting sedating anxiolytic drugs." (AR 32). However, a review of the entire section in Exhibit 4F referenced by the ALJ shows that the report did not represent that Pizano was lying about mental limitations in order to secure sedating drugs or represent that Pizano was lying about limitations due to her desire for sedating drugs. The report states that Pizano was "somewhat ambivalent about using legitimately prescribed medication for her depression and PTSD and prefers to *self medicate* with sedating anxiolytic drugs and meds which she then abuses." (AR 407)(emphasis added). Thus, the report indicates that to the extent the Pizano seeks to obtain sedating drugs, it is to "self medicate" herself for her mental problems.

While that may not be an appropriate thing for Pizano to do, it does not show that she was free of the mental problems that the ALJ discounted in discrediting Pizano's testimony. A review of the entirety of Exhibit 4F in fact supports Pizano's claimed limitations. For example, the report states that Pizano "has a family history of Major Depression in both parents," that she "has severe stressors[,] no income, no housing, alienation from family, loss of custody of her children, chronic mental illness and a feeling of hopelessness because of the problems that she faces." (AR 407).

The ALJ also discounted the credibility of Pizano indicating that "[e]ven prior to the alleged onset, the claimant had a very poor work history, suggesting her motivation to work has been limited." (AR 32). However, in giving the conclusion that Pizano lacks a desire to engage in gainful employment, the ALJ, in the first instance, did not indicate that she considered all pertinent facts during the relevant periods. For example, in pointing to gaps in Pizano's employment history, the ALJ failed to indicate that she had considered that such gaps occurred during times when traumatic events occurred in Pizano's life such as when she became divorced, lost custody of her children, and became homeless. (AR 32, 396-97, 407). Thus, the ALJ failed to create a logical bridge to her conclusion that Pizano lacks sufficient motivation to work. The ALJ, in the second instance, did not properly explain why the lack of motivation to work would in and of itself reflect a lack of credibility on the part of Pizano.

The court also notes that although the ALJ was not required to mention every piece of evidence in the record in assessing Pizano's credibility, the ALJ also failed

to indicate that she had considered the facts in the record relating to Pizano's life leading up to the alleged onset of her disability, which includes several traumatic events. (AR 407, 435-36). The ALJ's leap to the conclusion that Pizano was not being truthful as to her limitations was not adequately supported.

On remand, the ALJ must adequately evaluate the whole record and explain her basis if she reaches the conclusion that Pizano lacks credibility. Therefore, based on the above, the instant action is remanded to the SSA for further proceedings consistent with this opinion.

## CONCLUSION

Based on the foregoing analysis, Pizano's motion for summary judgment is granted in part and SSA's motion for summary judgment is denied. This matter is remanded to the SSA for further proceedings consistent with this opinion.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 22, 2014